IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) NORTH STAR MUTUAL INSURANCE COMPANY, a Minnesota corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) CASE NO. CIV-26-41-GLJ |
| (1) DEVIN GUTHRIE; and <br> (2) JEREMY WAYNE SMITH, an individual and personal representative of the Estate of Ely Wayne Smith; <br> (3) HARLEY CASEY, an individual; <br> (4) HANCE FIREWORKS, LLC, a limited liability company, d/b/a Hance Pyrotechnics; <br> (5) HANCE PYROTECHNICS, LLC, a limited liability company; <br> (6) IGNITE INVESTMENTS, LLC, a limited liability company | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff North Star Mutual Insurance Company, a Minnesota corporation, by and through its attorneys, and for its Complaint seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, alleges and states as follows:

### I.    JURISDICTION AND VENUE

1. Plaintiff North Star Mutual Insurance Company (hereinafter "North Star") is a corporation incorporated under the laws of the State of Minnesota and has its principal place of business in that State and is therefore a citizen of Minnesota for purposes of diversity jurisdiction. 28 U.S.C. §1332(C)(1).

1

2. Upon information and belief, Defendant Devin Guthrie ("Defendant Mr. Guthrie" or "Devin Guthrie") is an individual who is a citizen of the State of Oklahoma, and a resident of Sallisaw, Oklahoma.

3. Defendant Jeremy Wayne Smith is an individual and personal representative of the Estate of Ely Wayne Smith and is a citizen of the State of Oklahoma. The decedent Ely Wayne Smith was also a resident and citizen of the State of Oklahoma at the time of his death.

4. Defendant Harley Casey is an individual and a resident and citizen of the State of Oklahoma.

5. Defendant Hance Fireworks, LLC (d/b/a Hance Pyrotechnics) is a domestic limited liability company with its principal place of business in Oklahoma and, upon information and belief, its members are residents and citizens of the State of Oklahoma.

6. Defendant Hance Pyrotechnics, LLC is a domestic limited liability company with its principal place of business in Oklahoma and, upon information and belief, its members are residents and citizens of the State of Oklahoma.

7. Defendant Ignite Investments, LLC is a foreign limited liability company with its State of formation being Kentucky and, upon information and belief, its members are residents and citizens of the State of Kentucky and/or the State of Oklahoma and/or some state other than Minnesota.

8. The amount in controversy can reasonably be said to exceed the sum of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest.

9. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332, because of complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy.

10. Further, jurisdiction over an action for declaratory judgment exists pursuant to 28 U.S.C. §2201 ("In the case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

11. This Court is the appropriate venue for this action pursuant to 28 U.S.C. §1391 because Defendants reside in this district, a substantial part of the events giving rise to the claim occurred in this district, and Defendants are subject to personal jurisdiction in this district.

12. An actual controversy of a justiciable nature exists between Plaintiff and Defendants involving the rights and liabilities under a certain contract of insurance.

## II.     INSURANCE AGREEMENT

13. In May of 2025, Plaintiff North Star issued a Farmowners Policy (Policy Number F 62662) (hereinafter "the Policy") to Defendant Mr. Devin Guthrie. (Exhibit 1, Policy).

14. The Policy had a policy period of May 31, 2025 to May 31, 2026. (*Id.*).

15. The Policy contained a "Farm Personal Liability Coverages" part (Coverage L – Personal Liability) with an "each occurrence" limit of $1,000,000.00.

16. The Policy contained the following terminology:

**PERSONAL LIABILITY COVERAGE (FARM)**
. . .
**DEFINITIONS, NS-710 (Ed. 3-23) pages 2**
. . .
5. "Bodily injury" means bodily harm to a person and includes sickness, disease, or death. This also includes required care and loss of services . . .
. . .
6. "Business" means:
    a. a trade, a profession, or an occupation, all whether full-time, part-time, or occasional. This includes the rental of property to others, but does not include:

      1) the occasional rental for residential purposes of the part of the "insured premises" normally occupied solely by "your" household; or

      2) the rental or holding for rental of a portion of that part of the "insured premises" normally occupied by "your" household to no more than two roomers or boarders for use as a "residence"; or

  b. any other activity undertaken for money or other compensation, but this does not include:

      1) "farming";

      2) providing care services to a relative of an "insured";

      3) providing services for the care of persons who are not relatives of an "insured" and for which the only compensation is the mutual exchange of like services;

      4) a volunteer activity for which:

         a) an "insured" receives no compensation; or

         b) an "insured's" only compensation is the reimbursement of expenses incurred to carry out the activity;

         or

      5) an activity not described in 1) through 4) above for which no "insured's" total compensation for the 12 month period just before the first day of this policy period was more than $2,500.

. . .

10. "Farm employee" means a person employed by an "insured", or a person leased to an "insured" under a contract or an agreement with a labor leasing firm, to perform duties that relate to the "farming" operations of the "insured".  This does not include a "domestic employee" or a person employed in an "insured's" "business".

11. "Farming" means the ownership, maintenance, or use of premises for the production of crops or the raising or care of livestock, including all necessary operations. "Farming" also includes the operations of roadside stands and farm markets maintained for the sale of an "insured's" own farm products, but it does not include other retail activities.

. . .

16. "Insured premises" means:
  a. the premises described on the "declarations.";
  b. other land "you" use for "farming" purposes and new farm premises acquired by "you" during the policy period;
  c. that part of any other premises used by "you" as a "residence" and shown on the "declarations" as an "insured premises";
  d. that part of any other premises used by "you" as a "residence" and that is acquired by "you" during the policy period for such use;

  e. premises used by "you" in connection with a premises described in a. through d. above;
  f. cemetery lots and burial vaults of an "insured";
  g. that part of a premises not owned by an "insured" and that is temporarily used by an "insured" as a "residence";
  h. that part of a premises occasionally rented to an "insured" for other than "business" purposes;
  i. vacant land owned by or rented to an "insured". This includes land where a one- to four-family house, a townhouse, a row house or farm structure is being built for use as an "insured's" "residence"; and
  j. all access ways immediately adjoining the "insured premises".

. . .

20. "Occurrence" means an accident, including repeated exposures to similar conditions, that results in "bodily injury" or "property damage" during the policy period.
. . .
22. "Property damage" means physical injury to tangible property.  This includes the resulting loss of use.

**LIABILITY COVERAGES, NS-710 (Ed. 3-23) pages 2-9**
**PRINCIPAL LIABILITY COVERAGES**

**1. Coverage L - Personal Liability** — "We" pay, up to the "limit" that applies, all sums for which an "insured" is liable by law because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies.

"We" will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies. Such defense will be provided at "our" expense by counsel that "we" choose.

"We" may make investigations and settle claims or suits that "we" decide are appropriate. "We" do not have to settle or provide a defense after "we" have paid an amount equal to the "limit" that applies as a result of a judgment or written settlement.
. . .
**INCIDENTAL LIABILITY COVERAGES**

This policy provides the following Incidental Liability Coverages. They are subject to all of the "terms" of Coverage L and Coverage M. Except for Claims and Defense Cost, Damage To Property Of Others and First Aid Expense, they do not increase the "limits" stated for the Principal Liability Coverages.

**1. Business**
   "We" pay for "bodily injury" or "property damage" that arises out of:
   a. the rental or holding for rental of an "insured premises":
      1) on an occasional basis for use only as a "residence";
      2) in part for use only as a "residence" (No family unit may include more than two roomers or boarders.);
      3) in part for use as a school, studio, office, or private garage; or
      4) that is a farm premises described in the "declarations" or a new farm premises acquired by "you" during the policy period; or
   b.  the "business" activities of an "insured" under the age of 21 years, but only if such "insured" is involved in a part-time or occasional, self-employed "business" that does not employ others and the "bodily injury" or "property damage" arises out of activities related to that "business."
. . . .
**3. Contracts**

   "We" pay for "bodily injury" or "property damage":
      a. for which an "insured" is liable under a written contract that directly relates to the ownership, maintenance, or use of an "insured premises";
      and
      b. for which "you" are liable under a written contract made before the loss, in which "you" have assumed the liability of others.

5

    The loss causing the "bodily injury" or "property damage" must have occurred during the policy period.

. . . .

**EXCLUSIONS THAT APPLY TO LIABILITY COVERAGES, NS-710 (Ed. 3-23) pages 8-10**

**1. Exclusions That Apply To Coverages L And M** - Coverage L and Coverage M do not apply to:

. . .

    d. "bodily injury" or "property damage" that results from the rendering of or the failing to render a professional service.

    e. "bodily injury" or "property damage" arising out of or in any way related to a "business".
    However, this exclusion does not apply to the extent that coverage is provided:
        1) for the use of a motorized golf cart while on a golfing establishment under the Incidental Liability Coverage for Motorized Vehicles; or

        2) under the Incidental Liability Coverage for Business.

. . .

**2. Additional Exclusions That Apply Only To Coverage L** - Coverage L does not apply to:

. . .

    b. liability under a contract or an agreement entered into by an "insured", except as provided by Incidental Liability Coverage for Contracts.

. . ..

    i. a claim or indemnification for punitive, exemplary or treble damages, or any amount awarded by a court, the purpose of which is to punish a wrongdoer and to deter others from similar conduct. "We" will not pay for any taxable costs, interest, damages, or related defense costs.

. . .

**HOW MUCH WE PAY FOR LOSS OR OCCURENCE**

    . . .
    5. **Insurance Under More Than One Policy**

    **Coverage L – Personal Liability** – This insurance is excess over other valid and collectively insurance that applies to the loss or claim, other than insurance written specifically to provide coverage in excess of the "limits" that apply in this policy.

    If the other insurance is also excess, "we" pay only "our" share of the loss. "We" pay only that part of the loss that the applicable "limit" under this policy bears to the total amount of insurance covering the loss.

(Exhibit 1, Policy).

### III.    UNDERLYING INCIDENT AND LAWSUIT

17.    On December 17, 2025, Defendants Jeremy Wayne Smith and Harley Casey filed a Petition in Pushmataha County seeking damages arising from the explosion of certain

fireworks on July 2, 2025. Exhibit 2, Petition in *Jeremy Wayne Smith, individually and as personal representative of the Estate of Ely Wayne Smith, and Harley Casey, an individual, v. Hance Fireworks, LLC, a limited liability company, d/b/a Hance Pyrotechnics; Hance Pyrotechnics, LLC, a limited liability company; Ignite Investments, LLC, a limited liability company; and Devin Guthrie, an individual*, Case No. CJ-25-57, Pushmataha County (hereinafter "The Lawsuit").

18. Defendants Smith and Casey allege that Defendant Guthrie was an "individual, who resides in Sallisaw, Oklahoma and has been engaged in various businesses, including those providing labor, materials, transportation, equipment, and other services necessary to setup, manage and produce a commercial fireworks display." (Ex. 2, ¶9).

19. Defendants Smith and Casey further allege that: "At all relevant times, upon information and belief, Defendant, Ignite Investments LLC ("Ignite"), was a Limited Liability Company organized under the laws of Kentucky, which was engaged in a joint venture with Hance Fireworks and/or Hance Pyrotechnics and/or Devin Guthrie to be a subcontractor to transport and store necessary material, setup, operate, control, and direct a fireworks display on July 03, 2025." (Ex. 2, ¶10).

20. Defendants Smith and Casey further allege that: "At all times herein pertinent, Defendants were engaged in a joint venture to provide Class 1.3G display fireworks as well as setup, manage operate and control a commercial fireworks display for the Choctaw Nation in Pushmataha County, Oklahoma scheduled for July 03, 2025." (Ex. 2, ¶11).

21. Defendants Smith and Casey further allege that, on July 2, 2025, Ely Smith and Harley Casey, among others, were directed to help transport and prepare commercial grade

fireworks for the Choctaw Nation's annual "Boom in the Valley" event, which was scheduled to take place on July 03, 2025, at the Choctaw Nation Capitol Grounds in Tuskahoma, Oklahoma.  (Ex. 2, ¶19).

22. Defendants Smith and Casey further allege that Ely Smith and Harley Casey were "part time day workers" and "were not trained, licensed, nor had any prior experience or background with commercial fireworks."  (Ex. 2, ¶20).

23. Defendants Smith and Casey further allege that Hance Fireworks and/or Hance Pyrotechnics "entered into a contract with the Choctaw Nation in which it agreed to provide display fireworks for an upcoming event on July 3, 2025" and further "promised to provide all services necessary to conduct a safe commercial fireworks show, including all necessary and appropriate logistic, operational and safety compliance services."  (Ex. 2, ¶¶21, 22).

24. Defendants Smith and Casey further allege that Hance Fireworks and/or Hance Pyrotechnics "subcontracted all or part of the Event to Ignite, and Guthrie."  (Ex. 2, ¶23).

25. Defendants Smith and Casey further allege that Ely Smith and Harley Casey were "directed to load hundreds of explosive Class B 1.3G display fireworks from the garage of a residence near Sallisaw, Oklahoma into a "U-Haul" trailer" and to "unload all the fireworks, from the 'U-Haul' trailer into a residential and/or recreational cabin on the Choctaw Nation Capitol Grounds in Pushmataha County, Oklahoma" and to "transport and store the commercial fireworks for the Event in a negligent and unsafe manner by employees and/or agents of defendants."  (Ex. 2, ¶¶27, 28, 29).

26. Defendants Smith and Casey further allege that Ely Smith and Harley Casey were then "directed by defendants' employees and/or agents to connect ignition devices known as

electronic or e-matches to each individual display firework 'mortar shell' while within the residential cabin and surrounded by cardboard boxes containing dozens of professional grade, Class B 1.3G display fireworks." (Ex. 2, ¶30).

27. Defendants Smith and Casey further allege that, during the course of connecting the ignition devices, the display fireworks "'mortar shells' ignited causing the detonation of all of the improperly stored fireworks within the cabin and a massive explosion and fire." (Ex. 2, ¶31).

28. Defendants Smith and Casey allege that, as a result of the explosion and fire, Ely Smith "was engulfed in flames, burned and later died from injuries caused by the explosion" and Harley Smith "sustained burns from the fireworks explosion on his lower body and witnessed severe injuries to his friends Ely Smith and Cash Collins, both of whom were severely burned in the explosion." (Ex. 2, ¶16).

29. Defendants Smith and Casey seek unspecified damages in excess of $75,000.00 based on the following causes of action (1) Negligence and Gross Negligence; (2) Negligence Per Se; and (3) Strict Liability – Ultra Hazardous Activity. (Ex. 2).

30. Plaintiff North Star has elected to defend Defendant Guthrie under reservation of rights pending resolution of this Declaratory Judgment Action.

### IV.    CLAIM FOR RELIEF:  DECLARATORY JUDGMENT

31. Defendant Guthrie has made demand on North Star for defense and indemnity related to The Lawsuit.

32. Hence, an actual controversy exists between Plaintiff and Defendants relating to the respective legal rights and duties under the Policy described above.

33. This claim for relief states a cause of action for declaratory judgment pursuant to 28 U.S.C. § 2201.

34. Plaintiff North Star requests the Court declare that the policy does not provide coverage to Defendant Guthrie and that North Star therefore has no duty to defend or indemnify said Defendant for any matters related to The Lawsuit.

35. Based on the policy provisions discussed above, the policy excludes coverage for any suit seeking damages for "bodily injury" or "property damage" arising out of or in any way related to a "business," as more fully defined therein.

36. This exclusion applies to preclude coverage because Defendants Smith and Casey allege that Guthrie (i) was engaged in a business at all relevant times; (ii) had subcontracted to transport and store the relevant fireworks materials; and (iii) Smith and Casey allegedly suffered damage and loss arising out of the operation of Defendant Guthrie's business.

37. There is an exception under the exclusion to the extent coverage is provided under the Incidental Liability Coverage for Business, but this exception does not apply because The Lawsuit does not implicate "bodily injury" that arises out of "the rental or holding for rental of an 'insured premises,'" nor does Defendant Guthrie fall within the exception concerning the "business" activities of an "insured" under the age of 21 years.

38. In addition, the policy excludes coverage for "bodily injury" or "property damage" that results from the rendering of or the failing to render a "professional service," and the allegations of Defendants Smith and Casey implicate the rendering of or failure to render a professional service on the part of Defendant Guthrie concerning "providing labor, materials, transportation, equipment, and other services necessary to setup, manage and produce a commercial fireworks display." (Ex. 2, ¶9).

39. In addition, the policy excludes coverage for liability under a contract or an agreement entered into by any insured and this exclusion applies to the extent Defendant Guthrie has liability under any contract related to the acts or omissions alleged in The Lawsuit.

40. There is an exception under the exclusion for coverage provide under the Incidental Liability Coverage for Contracts, but the exception does not apply because the bodily injury alleged in The Lawsuit does not arise under a written contract that directly relates to the ownership, maintenance, or use of an "insured premises."

41. In addition, the policy excludes coverage for punitive and exemplary damages, and this exclusion applies to the extent The Lawsuit seeks punitive or exemplary damages against Defendant Guthrie.

42. Consequently, the Court should determine and find that North Star owes no duty to defend or indemnify Defendant Guthrie for any damages or loss sought in The Lawsuit discussed above.

43. Defendants Smith, Casey, Hance Fireworks, LLC, Hance Pyrotechnics, LLC, and Ignite Investments, LLC are proper parties to this declaratory judgment action in their capacity as plaintiffs and defendants in The Lawsuit. *Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 658 (10th Cir. 1946) ("The purpose of the declaratory judgment action is to settle actual controversies before they have ripened into violations of law or legal duty or breach of contractual obligations. In declaratory actions brought to determine coverage under insurance policies issued to protect the insured against liability to third persons, third persons asserting such liability have been held to be proper parties to a declaratory judgment proceeding, although their claims against the insurer are contingent upon recovery of a judgment against the insured."); *Shelter Mut. Ins. Co. v. Fritz*, 2019 WL

4781867, at *1 (E.D. Okla. 2019) (Magistrate Shreder) ("Ordinarily, in an action for a declaratory judgment, all persons interested in the declaration are necessary parties.").

WHEREFORE, premises considered, Plaintiff North Star Mutual Insurance Company respectfully requests the Court enter judgment in this declaratory judgment action finding that, pursuant to the terms of the insurance policy, Plaintiff North Star owes Defendant Guthrie no duty to indemnify or defend related to The Lawsuit or any loss or damage arising therefrom, and requests other appropriate relief, attorney fees, costs, or such relief available in law and equity.

Respectfully submitted,

BEST & SHARP

*s/ Sean H. McKee*
Sean H. McKee, OBA #14277
Matthew B. Free, OBA #18055
15 W. 5th Street, Suite 2100
One West Third Street, Suite 900
Tulsa, Oklahoma 74103
Telephone:    (918) 582-1234
Facsimile:    (918) 585-9447
smckee@bestsharp.com
mfree@bestsharp.com
*Attorneys for Plaintiff,*
*North Star Mutual Insurance Company*